UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWIS POWELL,

      Plaintiff,

                        CASE NO. 05-CV-70435-DT
                        JUDGE ARTHUR J. TARNOW
                        MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

KANISHA (BAILEY) HENRY,
RENALDO GARZA and
BRUCE CARLSON,

      Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 33)**

**I.    RECOMMENDATION:** The Court should deny plaintiff's motion for summary judgment on plaintiff's Eighth Amendment claim against defendant Carlson. Doc. Ent. 33.

**II.    REPORT:**

**A.    Background**

From approximately October 2002 to February or March 2003, sexual activity occurred between Lewis Powell, then an inmate at the Michigan Department of Corrections Thumb Correctional Facility (TCF), and Bruce Carlson, then a TCF employee. Doc. Ent. 33-4 at 6, 20.[1] A search warrant for Carlson's blood was issued on March 4, 2003, the affidavit in support of which was based in part upon Powell's allegation of sexual episodes with Carlson. Doc. Ent. 33-5 at 12. The Michigan State Police Lapeer Post completed a crime report the following day.

---

[1] Carlson has claimed that the time period of sexual relations was approximately December 2002 to March 2, 2003. Doc. Ent. 33-5 at 4.

Doc. Ent. 33-5 at 6. Carlson was arrested on the March 7, 2003 on three counts of second degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(i). Doc. Ent. 33-5 at 5.

On May 12, 2003, Powell signed an affidavit, and Carlson's preliminary examination took place in Lapeer County District Court. Doc. Entries 33-3 at 8, 33-4 at 1. During the preliminary examination, Powell testified that the first and second incidents took place in a plumbing closet; the third incident took place in his cell; the fourth, fifth and eighth incidents took place in the school basement; the seventh took place in a "little restroom area[,]" and the sixth, ninth and tenth incidents took place in health services. Doc. Ent. 33-4 at 7-21.

The information felony, dated May 27, 2003, alleges ten (10) counts of criminal sexual conduct - second degree (state prisoner). Doc. Ent. 33-7 at 3. Carlson entered a plea, and, on November 3, 2003, he was sentenced to 4 - 15 years on the offense of second degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(i). Doc. Ent. 33-8 at 2.

**B.     The Instant Case**

Powell was discharged from the Michigan Department of Corrections' custody on September 28, 2004.[2] On February 4, 2005, Powell (plaintiff), through counsel, filed a complaint against Thumb Correctional Facility (TCF) Corrections Officers Kanisha (Bailey) Henry, Renaldo Garza and Carlson. Therein, plaintiff refers to forced sexual activity with Carlson. Doc. Ent. 1 at 3-4 ¶¶ 8, 11, 12, 19. Plaintiff alleges violations of his Eighth Amendment (¶¶ 21-25) and substantive due process rights (¶¶ 26-29). He seeks declaratory, compensatory and punitive damages, as well as an award of attorney fees and costs. Doc. Ent. 1.

---

[2] *See* www.michigan.gov/corrections, "Offender Search", MDOC Number 276981.

On May 3, 2005, defendants Kanisha (Bailey) Henry and Renaldo Garza filed an answer to the complaint, a statement of affirmative defenses and a jury demand. Doc. Ent. 3. On the same day, Judge Tarnow referred this case to me to conduct pretrial matters and to issue a report and recommendation with respect to dispositive matters. Doc. Ent. 4.

On May 13, 2005, defendant Carlson filed a motion to appoint counsel. Doc. Ent. 6. On May 18, 2005, I entered an order conditionally granting defendant Carlson's request. Doc. Ent. 8.[3] On October 25, 2005, I entered an order granting defendant Carlson's motion to appoint counsel and appointing attorney John R. Minock to represent defendant Carlson. Doc. Ent. 12.

On February 24, 2006, plaintiff filed a motion for leave to amend his complaint to add several individuals as defendants. Doc. Ent. 14. On March 6, 2006, defendants Garza and Henry filed a motion for summary judgment in which they argued that (I) plaintiff's "Eighth Amendment claim should be dismissed because Defendants Garza and Henry did not have actual knowledge of the sexual activity between Powell and Carlson[,]" (II) "Defendants Garza and Henry are entitled to qualified immunity[,]" and (III) "[t]he substantive-due-process claim should be dismissed because it is subsumed by the Eighth Amendment claim, which also should be dismissed." Doc. Ent. 19.

On July 28, 2006, I entered an opinion and order denying plaintiff's motion for leave to amend. Doc. Ent. 24. Therein, I acknowledged plaintiff's claim that, without further opportunity for discovery, he has no other choice but to amend the complaint to include every employee on duty at TCF during the five month period in which defendant Carlson sexually

---

[3] On August 10, 2005, defendant Carlson signed answers to plaintiff's interrogatories. Doc. Ent. 33-6 at 20.

assaulted Plaintiff Powell. However, the opinion and order also explained the futility of amending the complaint as proposed in the motion. Doc. Ent. 24 at 3-7.

On the same day, I entered a report recommending that the Court grant defendants Henry and Garza's motion for summary judgment. Doc. Ent. 25. As to plaintiff's Eighth Amendment claim, I stated that plaintiff had offered neither support for the contention that defendants Garza and Henry made the necessary inference that would subject them to liability under the deliberate indifference standard, nor had he offered anything to show that defendants Garza and Henry actually knew of Carlson's conduct. Doc. Ent. 25 at 3-9. As to plaintiff's Fourteenth Amendment claim, I recommended dismissal on the basis that plaintiff's claims are controlled by the Eighth Amendment. Doc. Ent. 25 at 9.[4]

On February 13, 2007, Judge Tarnow entered an order adopting my July 28, 2006 report and recommendation and granting defendants Garza and Henry's March 6, 2006 motion for summary judgment. Doc. Ent. 28. Judge Tarnow specifically noted that "no evidence [was] offered to indicate that either [Garza or Henry] actually knew of the sexual assault, or drew the inference that it was occurring, as would be necessary to find deliberate indifference." Doc. Ent. 28 at 2. He further noted that plaintiff's claim was controlled by the Eighth Amendment. Doc. Ent. 28 at 3.

---

[4]On February 7, 2007, I entered an opinion and order granting defendants Garza and Henry's motion for a stay of discovery pending the Court's decision on the pending motion for summary judgment which raised qualified immunity. Doc. Ent. 27.

Accordingly, Garza and Henry have been terminated as defendants, and plaintiff's Fourteenth Amendment claim has been dismissed.[5] As plaintiff has noted, "[t]he only remaining claim in this case is against Defendant, Bruce Carlson, a former corrections officer and currently confined state prisoner." Doc. Ent. 33 at 4. Therefore, the only remaining defendant is Carlson and the only claim against him is based upon the Eighth Amendment.

**C.   Plaintiff's Motion for Summary Judgment**

On March 2, 2007, the parties filed a stipulated request for case evaluation. Doc. Ent. 29. Nearly four months later (June 27, 2007), plaintiff filed a Fed. R. Civ. P. 56(a) motion for summary judgment, arguing that "Officer Carlson acted with a sufficiently culpable state of mind[,]" and "[t]he repeated sexual assaults against Powell were serious enough to constitute cruel and unusual punishment." Doc. Ent. 33 at 10-12. On August 20, 2007, I entered an order setting Carlson's response deadline to plaintiff's motion for summary judgment for September 20, 2007. Doc. Ent. 34.

Technically, this motion is unopposed. The local rules of this Court provide that "[a] response to a dispositive motion must be filed within 21 days after service of the motion." E. D. Mich. LR 7.1(d)(1)(B). Four months have passed since the filing of plaintiff's June 27, 2007 dispositive motion. More than one month has passed since the September 20, 2007 deadline set by my August 20, 2007 scheduling order. Furthermore, on October 24, 2007, my law clerk sent

---

[5]I assume this dismissal was of the claim itself and not solely to the extent it applied to Garza and Henry. In any event, it appears that the claim was limited to defendants Garza and Henry, because it alleges that he "had a substantive due process right that he would not be subjected to sexual assaults by a correctional officer[,]" and that "[d]efendants failed to protect Plaintiff from being sexually assaulted." Doc. Ent. 1 at 5 ¶¶ 27, 28.

5

counsel for the parties an electronic mail stating that no written request for oral argument would be entertained unless and until defense counsel files a response to the pending motion. My law clerk has not received a response to this communication. Notwithstanding E. D. Mich. LR 7.1(d)(1)(B), my scheduling order and my law clerk's electronic mail, Carlson has not filed a response to the motion.

This Court's rules also provide that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." E. D. LR 7.1(b). Although Carlson has not filed a response, it appears that he may oppose the motion, as plaintiff has stated that he was unable to obtain concurrence in the relief he seeks. Doc. Ent. 33 at 1.

Whatever the Court assumes about Carlson's position on the instant motion, the Sixth Circuit has stated that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [the initial] burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Therefore, this report will address the merits of plaintiff's claims as presented in the instant motion.

**D.     Fed. R. Civ. P. 56**

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech*

*Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

Plaintiff has the burden of proof on his Eighth Amendment claim. *Johnson v. Breeden*, 280 F.3d 1308, 1316 (11th Cir. 2002) ("The district court, however, made it clear to the jury that

the burden of proving that the defendants had used excessive force in violation of the Eighth Amendment rested on Johnson."). Therefore, in order to succeed on his motion for summary judgment, plaintiff needs to show that he would be entitled to a directed verdict at trial. William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991).

E. **The Court should conclude that plaintiff is entitled to summary judgment on his Eighth Amendment claim against Carlson.**

a. Plaintiff's complaint sets forth an Eighth Amendment claim. Doc. Ent. 1 at 4-5 ¶¶ 21-25. As to Carlson, plaintiff claims that he "had an Eighth Amendment right that he would not be subjected to sexual assaults by Defendant CARLSON." Doc. Ent. 1 at 4 ¶ 22.

In the pending motion for summary judgment, plaintiff alleges that Carlson "sexually assaulted [him] on many occasions while Carlson was a prison guard and Powell was [an] inmate[,]" and that Carlson's actions "clearly violate Powell's Eighth Amendment right to be free from cruel and unusual punishment." Doc. Ent. 33 at 3-4.

Specifically, plaintiff argues that "Officer Carlson acted with a sufficiently culpable state of mind[,]" and "[t]he repeated sexual assaults against Powell were serious enough to constitute cruel and unusual punishment." Doc. Ent. 33 at 10-12. Plaintiff's motion for summary judgment seeks relief on the basis that "there is absolutely no evidence . . . that Defendant Carlson is not liable for violating Powell's Eighth Amendment right to be free from cruel and unusual punishments when he engaged in sexual relations with inmate Powell on at least 10 different occasions." Doc. Ent. 33 at 12.

b. The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the

treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

> who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847.

However, the official cannot be liable for risk of which he is unaware. *Id*. at 837. An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *Id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *Id*. at 844-45.

Put succinctly, "[t]o prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (referencing *Hudson*, 503 U.S. at 8).

**c.** Carlson has not filed an answer to the complaint; therefore, in light of the complete absence of a response to plaintiff's motion, the Court is left to examine one-sided evidence.

11

Perhaps the most persuasive portions of plaintiff's motion papers are his May 12, 2003 affidavit (Doc. Ent. 33-3) and the same day preliminary examination transcript (Doc. Ent. 33-4).

In his affidavit, plaintiff describes a series of events beginning with Carlson's March 15, 2002 issuance of a major misconduct against plaintiff and culminating with a March 11, 2003 Flint Journal News article titled "Guard Charged With Inmate Sex". Doc. Ent. 33-3 at 1-8. Therein, plaintiff specifically stated that "[a]t no time was [he] a willing participant in these [sexual acts committed upon him by Carlson]], or any acts committed." Doc. Ent. 33-3 at 6.

During the preliminary examination, plaintiff testified that "it's pretty much mandatory if you're a prisoner, to do what an officer tells [you] to do." Doc. Ent. 33-4 at 7. He also testified that he "felt [he] had to comply with what [Carlson] wanted [him] to do." Doc. Ent. 33-4 at 8. He further stated he did not consider the acts to be consensual. Doc. Ent. 33-4 at 24.

In an effort to give Carlson the benefit of the doubt, I have examined his record filings. It appears that the only documents which have been filed by Carlson or on his behalf are (1) the May 13, 2005 motion for appointment of counsel (Doc. Ent. 6) and (2) the March 2, 2007 stipulation (Doc. Ent. 29). These filings to not assist the Court with respect to the pending motion.

However, the instant motion papers contain two documents which may be said to represent Carlson's position. The first is Carlson's March 4, 2003 statement contained in the MSP Lapeer Post report. Doc. Ent. 33-5 at 4. Therein, Carlson admits to having had on approximately five occasions "sexual relations with inmate Powell[,]" beginning late December 2002 and concluding on March 2, 2003. He further stated, "I know that having a sexual relationship with Powell was wrong." Doc. Ent. 33-5 at 4.

**12**

The second is Carlson's August 10, 2005 response to plaintiff's interrogatories. Therein, Carlson admits that he first encountered plaintiff in Franklin Unit and that the first sexual encounter took place somewhere from mid to late October in a closet room in a stairwell of Franklin Unit. Doc. Ent. 33-6 at 6-7. Carlson claims these acts were consensual. Doc. Ent. 33-6 at 8. He admits to having deposited a total of $60.00 in plaintiff's prison account, but states this had to do with plaintiff's desire to have Carlson smuggle drugs and cosmetic items into the prison. Doc. Ent. 33-6 at 10. He was under the care of a psychologist from March 2003 to November 2003. During that time, he was hospitalized at White Pines Hospital in Saginaw for psychological problems/psychiatric reasons (June or July 2003). Doc. Ent. 33-6 at 17-18.[6]

---

[6]The weight to be given to each of these four pieces of evidence varies. For example, there is no question that plaintiff was sworn by the Court before giving testimony at the May 12, 2003 preliminary examination. Doc. Ent. 33-4 at 3-4. However, his affidavit was merely signed before a notary public on May 12, 2003. There is no indication that it was a sworn statement or that it was signed under penalty of perjury. Doc. Ent. 33-3 at 1, 8.

Likewise, Carlson's March 4, 2003 statement set forth within the March 5, 2003 MSP Lapeer Post report merely states that it represents Carlson's written statement. Doc. Ent. 33-5 at 4. However, his interrogatory answers, while not signed under penalty of perjury, were signed following a declaration that "the above responses are true to the best of my knowledge, information and belief." Doc. Ent. 33-6 at 20.

As will be evident below, this report derives Carlson's position on the instant motion from his interrogatory answers. Although the interrogatory answers are not signed "under penalty of perjury", as set forth in 28 U.S.C. § 1746, the Court should conclude that these answers are "probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). To be sure, Rule 33 requires that "[e]ach interrogatory shall be answered separately and fully in writing under oath[.]" Fed. R. Civ. P. 33(b)(1). *See also Scott v. Genuine Parts Co.*, 2002 WL 171729, 2 (S. D. Ind. Feb. 1, 2002) (finding compliance with Rule 33 where "[d]efendant submitted with each set of interrogatory response a 'verification' page in which the signator was 'duly sworn' before a notary public who signed, placed a notary seal, and dated the document."). However, in this case, the Court should be hesitant

13

**d.**     Plaintiff is not entitled to summary judgment on the objective component of his Eighth Amendment claim.  It is clear that plaintiff had a constitutional right to be secure in his bodily integrity and free from attack by prison guards.  *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).  It is equally clear that sexual assault by a prison guard could constitute the 'unnecessary and wanton infliction of pain' that is barred by the Eighth Amendment.  *Freitas v. Ault*, 109 F.3d at 1338; *see also, Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997).  Therefore, as I stated in my previous report and recommendation, plaintiff's allegations of sexual assault by Carlson clearly warrant Eighth Amendment protection.

However, for purposes of the summary judgment motion brought by plaintiff, it is appropriate to view the evidence in the light most favorable to Carlson.  While his lack of a response to this motion makes this a more challenging task, the Court can discern from Carlson's interrogatory answers his position that the acts were consensual.  Doc. Ent. 33-6 at 7-8, ## 31, 32.

In support of his motion for summary judgment, plaintiff relies solely upon *Hudson v. McMillian*, 503 U.S. 1 (1992).  It is true, as plaintiff notes, that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9; Doc. Ent. 33 at 12.  Relying upon *Hudson*, plaintiff argues that, "as evidenced by the policy behind laws criminalizing any sexual conduct between guards and inmates, engaging in sexual relations with a prisoner is 'repugnant to the conscience of

---

```
to grant plaintiff's motion on the basis that Carlson's position
registered in his interrogatory answers was not made under oath.
These August 10, 2005 answers predate the October 25, 2005 order
appointing counsel for Carlson, and appointed counsel has not
argued Carlson's position with regard to the instant motion.
```

mankind.'" Doc. Ent. 33 at 12 (citing *Hudson*, 503 U.S. at 10). Therefore, plaintiff claims, "when a prison guard engages in sexual contact with one of his inmates, he is violating that inmate's right to be free from cruel and unusual punishments." Doc. Ent. 33 at 12.

Several courts have stated that a consensual sexual relationship does not establish an Eighth Amendment violation. *See Hall v. Beavin*, No. 98-3803, 1999 WL 1045694, at *1 (6th Cir. Nov. 8, 1999); *Freitas v. Ault*, 109 F.3d 1335, 1338-1339 (8th Cir. 1997); *Phillips v. Bird*, No. 03-247, 2003 WL 22953175, at *3-*6 (D. Del. Dec. 1, 2003); *Fisher v. Goord*, 981 F. Supp. 140, 174 (W. D. N.Y. 1997). As the Eighth Circuit has stated, "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment." *Freitas*, 109 F.3d at 1339; *see also, Phillips*, 2003 WL 22953175, at *6 ("Consensual sex between two adults does not constitute cruel and unusual punishment simply because it occurs within the walls of a prison.").

Therefore, as a result of the disparity between plaintiff's position that these acts were not consensual and Carlson's position that they were, plaintiff is not entitled to a directed verdict on the objective component of his Eighth Amendment claim against Carlson.

This conclusion is not altered by the fact that consent was not an element of Carlson's state court conviction. The statute under which plaintiff was convicted provides that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists: . . . [t]hat other person is under the jurisdiction of the department of corrections and the actor is an employee or a contractual employee of, or a volunteer with, the department of corrections who knows that the other person is under the jurisdiction of the department of corrections." Mich. Comp. Laws §

15

750.520c(1)(i). Coercion or lack of consent is not an element of this offense; therefore, Carlson's plea to / conviction on this offense does not bar him from arguing that the sexual relationship he had with plaintiff was not coerced or was consensual. *Cf. People v. Lewis*, No. 211362, 2000 WL 33406760 (Mich. App. Sept. 29, 2000) ("In order to prove defendant guilty beyond a reasonable doubt, the prosecution was required to show that defendant engaged in sexual contact with complainant, that complainant was under the jurisdiction of the DOC, and that defendant was an employee of the DOC.").[7]

e.   If the Court agrees with my conclusion that plaintiff is not entitled to summary judgment on the objective component of his Eighth Amendment claim, it need not address whether plaintiff is entitled to summary judgment on the subjective component.

In the event the Court disagrees with my foregoing conclusion, it should still conclude that plaintiff is not entitled to summary judgment on the subjective component - namely, as discussed above, Carlson may not have acted with a sufficiently culpable state of mind if the acts were consensual, as he claims they were.

---

[7]*Lewis* interpreted Mich. Comp. Laws § 750.520e ("Fourth degree criminal sexual conduct"), which, like § 750.520c(1)(i), provides in pertinent part that:

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exists: . . . (d) That other person is under the jurisdiction of the department of corrections, and the actor is an employee or a contractual employee of, or a volunteer with, the department of corrections who knows that the other person is under the jurisdiction of the department of corrections.

*People v. Moon*, No. 215828, 2000 WL 33403028, *1 (Mich. App. Nov. 3, 2000) (citing Mich. Comp. Laws § 750.520e(1)(d)).

As plaintiff notes, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; Doc. Ent. 33 at 10. Plaintiff argues, "[i]t is well-established that prison guards have too much power over inmates' lives for sexual relations to be truly consensual." Doc. Ent. 33 at 11. Although the Sixth Circuit has recognized that "power arrangements" exist in a prison environment,[8] and although plaintiff points to the state (Mich. Comp. Laws § 750.520c(1)(i)) and federal (18 U.S.C. § 2243)[9] statutes which

---

[8]In *Pelfrey v. Chambers*, 43 F.3d 1034, 1035 (6th Cir. 1995), the Sixth Circuit considered "whether the isolated and unauthorized use of force by a prison guard on an inmate constitutes 'punishment' within the meaning of the Eighth Amendment." In concluding that plaintiff had stated a cognizable Eighth Amendment claim under § 1983 for an Eighth Amendment violation, it stated:

> We categorically reject defendants' argument that "an unprovoked attack is not punishment." To hold otherwise would ignore the power arrangements that exist within the prison environment and lead to the anomalous result in which a prisoner who is assaulted after having provoked a guard can state a cognizable claim for a constitutional violation while his cellmate who is assaulted *for absolutely no reason* is afforded only that relief permitted by state law.

*Pelfrey*, 43 F.3d at 1037.

[9]18 U.S.C. § 2243 ("Sexual abuse of a minor or ward") provides in part:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in a sexual act with another person who is--
>
> (1) in official detention; and

criminalize sexual activity between prison officials and prisoners, plaintiff points to no case law in support of his argument that such relations can never be consensual. Doc. Ent. 33 at 11.

Therefore, while it may be the case that "[t]here is never an excuse for a guard to engage in sexual relations with an inmate. Such relations serve absolutely no penal purpose[,]" Doc. Ent. 33 at 11, the Court should disagree with plaintiff's argument that "there is no question that Defendant Carlson had a sufficiently culpable state of mind." Doc. Ent. 33 at 11.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

```
    (2) under the custodial, supervisory, or disciplinary
    authority of the person so engaging;

    or attempts to do so, shall be fined under this title,
    imprisoned not more than 15 years, or both.
```
18 U.S.C.A. § 2243(b).

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 11/9/07

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 9, 2007.
>
> s/Eddrey Butts
> Case Manager